IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TERRONIOUS DIXON,
    Petitioner,

vs.                              Case No.: 3:04cv361/MCR/EMT

JAMES R. McDONOUGH,[1]
    Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

    This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 7). Respondent filed an answer and relevant portions of the state court record (Docs. 12, 19). Petitioner replied (Doc. 21).

    The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.    BACKGROUND AND PROCEDURAL HISTORY

    The procedural background of this case is undisputed by the parties. Petitioner was charged with one count of sale of cocaine and one count of possession of cocaine (Doc. 12, Ex. A at 49). Petitioner entered a plea of guilty to the charges, and on November 1, 2000, he was sentenced to consecutive terms of fifteen years imprisonment for the sale count and five years imprisonment for

---

[1] James R. McDonough succeeded James Crosby as Secretary for the Department of Corrections, and is automatically substituted as Respondent. *See* Fed. R. Civ. P. 25(d)(1).

the possession count (*id.*, Ex. A at 49–55).  On February 15, 2001, Petitioner filed a motion to withdraw his plea (*id.*, Ex. A at 56–57).  On March 8, 2001, the trial court denied the motion on the grounds that the motion was untimely and facially insufficient (*id.*, Ex. A at 58–59).  On April 6, 2001, Petitioner moved for postconviction relief pursuant to Fla. R. Crim. P. 3.850 in the Circuit Court for Leon County, Florida (*id.*, Ex. A at 60–62).  After holding an evidentiary hearing, the trial court denied the motion on October 30, 2002 (*id.*, Ex. A at 72–76).  Petitioner appealed the denial to the Florida First District Court of Appeal (First DCA), and the appellate court affirmed per curiam without opinion on December 15, 2003, with the mandate issuing on December 31, 2003 (*id.*, Ex. B).  Dixon v. State, 864 So. 2d 403 (Fla. 1st DCA Dec. 15, 2003) (Table).  On March 10, 2004, Petitioner filed a petition for writ of habeas corpus in the First DCA pursuant to Fla. R. App. P. 9.100(b) (*id.*, Ex. C).  The petition was denied on the merits on April 5, 2004, and the court denied Petitioner's motion for rehearing on May 13, 2004 (*id.*, Ex. D).  Dixon v. State, 892 So. 2d 1017 (Fla. 1st DCA Apr. 5, 2004) (Table).

Petitioner filed the instant habeas action on October 15, 2004 (Doc. 1 at 10).  This court has previously determined that Petitioner's habeas petition was timely filed (*see* Docs. 16, 17).  Respondent concedes that Petitioner has exhausted his state court remedies (Doc. 19 at 5).

II.  STANDARD OF REVIEW

Section 2254(a) of Title 28 provides, "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws of the United States."  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for federal habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218–19.

Section 2254 now provides:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
  (1)  resulted in a decision that was contrary to, or involved an

>  unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254 (West Supp. 2001).

The United States Supreme Court explained the framework of review under § 2254(d)(1) in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test in habeas cases was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412–13; Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).

The Eleventh Circuit has developed a three-step process for applying the Williams test to any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal state court proceeding. *See* Wellington v. Moore, 314 F.3d 1256, 1260–61 (11th Cir. 2002); Robinson v. Moore, 300 F.3d 1320, 1343-45 (11th Cir. 2002). First, the court must ascertain the controlling legal principles that are clearly established by the Supreme Court at the time of the state

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–375, 390–399, 120 S. Ct. at 1499–1503, 1511–1516); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–413, 120 S. Ct. at 1518–1523). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

court adjudication. Wellington, 314 F.3d at 1260; Robinson, 300 F.3d at 1343. Second, the court must determine whether the state court adjudication was contrary to the clearly established Supreme Court law. Wellington, 314 F.3d at 1260, Robinson, 300 F.3d at 1344. "The 'contrary to' clause in § 2254(d)(1) 'suggests that the state court's decision must be substantially different' from the relevant Supreme Court precedent." Wellington, 314 F.3d at 1260 (quoting Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), *cert. denied*, 535 U.S. 1104, 122 S. Ct. 2310, 152 L. Ed. 2d 1065 (2002) (quoting Williams, 529 U.S. at 405)). "Although a state court's decision that 'applies a rule that contradicts' the governing Supreme Court law is 'contrary,' a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." Wellington, 314 F.3d at 1260 (citing and quoting Williams, 529 U.S. at 404–06). If the state court applied the correct Supreme Court precedent, and the United States Supreme Court, faced with materially indistinguishable facts, has not reached a decision different from the decision reached by the state court in the petitioner's case, the case does not fit within the "contrary to" clause, and the federal habeas court must proceed to the third step and determine whether the state court "unreasonably applied the relevant Supreme Court authority." Fugate, 261 F.3d at 1216. Likewise, if the facts of the Supreme Court cases and the petitioner's case are not substantially similar, "a state court decision that applies 'the correct legal rule' based on Supreme Court law to the facts of the petitioner's case would not fit within the 'contrary to' clause even if the federal court might have reached a different result relying on the same law." *Id.* (citing and quoting Williams, 529 U.S. at 406). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002).

The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable." Williams, 529 U.S. at 410. The Supreme Court has explained that "a federal habeas court may not issue a writ under the unreasonable application clause 'simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Bell v. Cone, 535 U.S. 685, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002) (quoting

Williams, 529 U.S. at 411). Indeed, "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Lockyer v. Andrade, 538 U.S. 63, 123 S. Ct. 1166, 1175, 155 L. Ed. 2d 144 (2003). A state court's incorrect application of clearly established law will be held to be reasonable and not warrant a writ unless "thorough analysis by a federal court produces a firm conviction that that [the state court] judgment is infected by constitutional error." Williams, 529 U.S. at 389. "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations." Yarborough v. Alvarado, 541 U.S. 652, 124 S. Ct. 2140, 2149, 158 L. Ed. 2d 938 (2004) (citation omitted). Although § 2254(d)(1) is concerned only with federal law as clearly established by the Supreme Court, this court may look to circuit precedent to demonstrate reasonable applications of Supreme Court precedent. Van Poyck v. Fla. Dep't of Corrections, 290 F.3d 1318, 1322 n.4 (11th Cir. 2002).

In deciding whether a state court decision involved "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding" under § 2254(d)(2), determinations of fact are "presumed to be correct," unless the presumption is rebutted by Petitioner "by clear and convincing evidence." Section 2254(e)(1); *see* Miller-El v. Cockrell, 537 U.S. 322, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding, § 2254(d)(2).") (dictum); Fugate, 261 F.3d at 1215 (quoting 28 U.S.C. § 2254(e)(1)); Parker v. Head, 244 F.3d 831, 835-36 (11th Cir. 2001) (citing § 2254(d)(2) and (e)(1)); *see also* Crawford v. Head, 311 F.3d 1288 (11th Cir. 2002) (explaining that the new statute provides a "highly deferential standard of review" of the state court's factual determinations). Thus, not only must the state court's factual determination have been unreasonable, but the court's factual findings must be shown unreasonable by clear and convincing evidence. *See* Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) (citing § 2254(e)(1); Rutherford v. Crosby, 385 F.3d 1300, 1308 (11th Cir. 2004) (concluding that "[petitioner] has not shown by clear and convincing evidence that the Florida

Supreme Court's factual finding . . . [wa]s unreasonable in light of the evidence in the state court record")).

Within this framework, the court will review Petitioner's claim.

III.   PETITIONER'S CLAIM

<u>Petitioner was denied his Sixth Amendment right to effective assistance of counsel, because counsel misadvised Petitioner as to the maximum sentence he could receive.</u>

(Doc. 7 at 4).

Petitioner contends that prior to jury selection, his trial counsel informed him that the State offered a sentence of 8–15 years in exchange for pleading guilty to the charges of sale and possession of cocaine (*id.* at 7). His counsel also told him that the maximum sentence he could receive was 15 years (*id.*). Based on this information, Petitioner states that he rejected the plea offer (*id.*). Thus, Petitioner's trial commenced. After the judge's introduction during the trial, but before opening statements, Petitioner decided to enter an "open" plea to the judge, as Petitioner had previously been informed that the plea offer would be revoked "once the jury entered the courtroom" (*id.*). Petitioner states that he understood he could be sentenced to the maximum, which he believed was 15 years (*id.*). However, during the plea proceedings, the state informed all parties that the maximum possible sentence Petitioner could receive for both charges was 20 years, and Petitioner's counsel disputed this fact (*id.*). Petitioner's counsel later told the court that Petitioner was aware of the maximum sentence of 20 years, but Petitioner states that he "was never specifically asked whether he understood that the maximum he could receive was 20 years" (*id.* at 7–8). Petitioner contends that if he had known that the maximum possible sentence was 20 years, he would have accepted the State's plea offer of 8–15 years when it was available (*id.* at 8). Furthermore, Petitioner alleges that his counsel's misadvice about the possible maximum resulted in his plea being involuntarily entered (*id.* at 8).

        1.   <u>Clearly Established Supreme Court Law</u>

The standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To obtain relief under <u>Strickland</u>, a petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have

been different. 466 U.S. at 687–88. "The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). If a petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. Strickland, 466 U.S. at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S. Ct. 2104, 158 L. Ed. 2d 718 (2004); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

> Trying cases is no exact science. And as a result, we must never delude ourselves that the fair review of a trial lawyer's judgment and performance is an activity that calls for great precision or for a categorical approach. When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." Atkins v. Singletary, 965 F. 2d 952, 958 (11th Cir. 1992). And, "a court should be highly deferential to those choices . . . that are arguably dictated by a reasonable trial strategy." Devier v. Zant, 3 F. 3d 1445, 1450 (11th Cir. 1993). Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it can be shown that no reasonable lawyer, in the circumstances would have done so.

Rogers v. Zant, 13 F. 3d 384, 386 (11th Cir. 1994); Grayson v. Thompson, 257 F.3d 1194, 1216 (11th Cir. 2001) (to show counsel's performance was unreasonable, defendant must establish that no competent counsel would have taken the action that his counsel did take); Chandler, 218 F.3d at 1313 (issue is not what is possible, prudent, or appropriate, but what is constitutionally compelled) (citing Burger v. Kemp, 483 U.S. 776, 107 S. Ct. 3114, 3126, 97 L. Ed. 2d 638 (1987)).

However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v. Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a

reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington, 314 F.3d at 1260. The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of

>showing that the decision reached would reasonably likely have been different absent the errors. . . . [T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged.

*Id.* at 695–96.

An ineffective assistance of counsel claim may be used to attack the entry of a plea on grounds that the plea was not voluntarily and intelligently made because counsel did not provide Petitioner with "reasonably competent advice." Cuyler v. Sullivan, 446 U.S. 335, 344, 100 S. Ct. 1708, 1716, 64 L. Ed. 2d 333 (1980) (quoting McMann v. Richardson, 397 U.S. 759, 770, 90 S. Ct. 1441, 1448, 25 L. Ed. 2d 763 (1970)). In a plea situation, counsel must provide advice "within the range of competence demanded of attorneys in criminal cases." Hill v. Lockhart, 474 U.S. 52, 56–57, 106 S. Ct. 366, 369, 88 L. Ed. 2d 203 (1985) (quoting McMann, 397 U.S. at 771, 90 S. Ct. at 1449)). Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused. Stano v. Dugger, 921 F.2d 1125, 1150–51 (11th Cir. 1991). Absent such blatant errors, however, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." Yordan v. Dugger, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of the Strickland standard in a plea situation, Petitioner must prove that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 59, 106 S. Ct. 370. Often this analysis hinges upon whether eradication of the error would have led counsel to change his recommendation as to the plea, which in turn generally depends on whether the outcome of a trial would have been substantively different. *Id.* at 59–60, 106 S. Ct. at 370–71. While counsel can be deemed ineffective under Strickland for failing to provide proper advice during the plea process, Petitioner must come forth with objective evidence to show that but for counsel's errors he would not have accepted the plea offer, and would have insisted on going to trial. *See* Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); Toro v. Fairman, 940 F.2d 1065, 1068 (7th Cir. 1991). Conclusory, after-the-fact statements that Petitioner would not have pled guilty do not meet this requirement, nor is it sufficient to say that Petitioner would have received a less harsh sentence had

he not accepted the plea offer. *See* Diaz, 930 F.2d at 835; *see also* Johnson v. Duckworth, 793 F.2d 898, 902 n.3 (7th Cir. 1986).

    2.   Federal Review of State Court Decision

 Petitioner contends that his trial counsel's misadvice about the maximum possible sentence had two results: one, Petitioner alleges that he would have accepted the state's plea offer of 8–15 years if he had known the maximum was 20 years; two, he argues that his plea was involuntary. Petitioner did not raise either of these precise claims in state court. Instead, his state court motions concerned his claim that his counsel was ineffective when she advised him that he should refuse the state's offer because there was a chance he might get fewer than eight years by pleading straight up to the judge.[3] Accordingly, while the state courts considered Petitioner's claim that his counsel provided incorrect advice (namely, that the trial judge might sentence him to fewer than 8 years), the state courts did not consider his claim that she misadvised him as to the possible maximum. Therefore, although Respondent has conceded exhaustion, it does not appear Petitioner exhausted these claims in state court. However, section 2254 permits a habeas petition to be denied on the merits, notwithstanding the failure of the petitioner to exhaust state court remedies. 28 U.S.C. § 2254(b)(2). Upon review, this court concludes Petitioner's claims are without merit.

 Initially, in Petitioner's Rule 3.850 motion, he did raise an ineffective assistance of counsel claim regarding his plea. The Rule 3.850 court held an evidentiary hearing, considered the transcript of the proceedings below, and issued a written order with factual findings, several of which are relevant to Petitioner's instant claim. First, the Rule 3.850 court found that the state made a plea offer of 8–15 years on October 31, 2000, in between jury selection and trial, and Defendant rejected the offer (Doc. 12, Ex. A at 73; *see also id.*, Ex. A at 81–86). Next, the court found that Petitioner

---

  [3]In his motion to withdraw his plea, Petitioner stated that "On the morning of November 1, 2002, [he] was informed by attorney Broome that unless he entered a plea, he would be sentenced to at least 15 years state prison, and possibly more. Said attorney also told [Petitioner] that the judge would sentence him to less time if he entered the plea" (Doc. 12, Ex. A at 56–57). Next, in Petitioner's Rule 3.850 motion, he contended that the plea offer made by the state attorney was eight years total for the sale and possession charges against him, as well as for numerous other charges that were then pending against him, and that his attorney told him not to take the offer, because the only way he would be sentenced to fewer than eight years would be if he pled straight up to the judge (*id.*, Ex. A at 61). In both of these motions, he argued that his trial counsel was ineffective for counseling him that he might receive *less* time than the state was offering by pleading straight up to the judge. Finally, Petitioner's state habeas motion concerns the alleged ineffective assistance of his evidentiary hearing counsel, not his trial counsel (*see id.*, Ex. C at 5).

Case No: 3:04cv361/MCR/EMT

pled "straight up" to the judge on November 1, 2000 (*id.*, Ex. A at 73; *see also id.*, Ex. A at 25). Finally, the court found that, before Petitioner entered the plea, the trial judge conducted a thorough plea colloquy and confirmed that Petitioner understood he could receive up to 20 years and that he could serve the entire sentence of 20 years, with credit only for time previously served; that Petitioner's counsel had never told him that he would serve less than the entire sentence of up to 20 years; and that Petitioner had previously been involved with the criminal justice system on at least three prior occasions (*id.*, Ex. A at 73–74; *see also id.*, Ex. A at 18–25, 36). In sum, the Rule 3.850 court found that the trial court "told [Petitioner] he could receive a sentence of up to 20 years, that Defendant understood the potential sentence and that Defendant's trial counsel did not tell him or make promises otherwise" (*id.*, Ex. A at 75).

This court defers to the Rule 3.850 court's factual findings, as Petitioner has not shown by clear and convincing evidence that the findings were unreasonable. *See* 28 U.S.C. §§ 2254(d)(2), -(e)(1); Callahan v. Campbell, 427 F.3d 897, 926 (11th Cir. 2005) ("[Section] 2254(d)(2) allows for relief where the state court adjudication 'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' § 2254(d)(2). Not only must the factual determination have been unreasonable, but the state court's factual findings must be shown unreasonable by clear and convincing evidence.").[4]

Petitioner must satisfy both prongs of Strickland in order to obtain relief. Even if Petitioner could demonstrate that his counsel's performance was deficient, Petitioner cannot meet the prejudice prong of Strickland. There is no reasonable probability that, but for his counsel's misadvice about the possible maximum sentence, the result of the proceeding would have been different. Specifically, Petitioner contends that his counsel originally informed him that the maximum sentence was 15 years, and he did not find out that the maximum was 20 years until he decided to plead straight up to the judge (Doc. 7 at 8). Further, Petitioner alleges that if he had known the maximum was actually 20 years, he would have accepted the state's plea offer of 8–15 years (*id.*).

---

[4]Several of Petitioner's allegations in his instant petition conflict with the factual findings of the Rule 3.850 court. For example, Petitioner states that before pleading to the judge, he "was never specifically asked whether he understood that the maximum he could receive was 20 years" (Doc. 7 at 8) and that the state made its offer *prior* to jury selection (*id.* at 7). However, Petitioner's allegations conflict with the trial transcript and the evidentiary hearing transcript, and Petitioner has offered no evidence that the Rule 3.850 court's findings were unreasonable.

Case No: 3:04cv361/MCR/EMT

Initially, Petitioner has not shown that he *could have* accepted the state's offer when or after it was made. Jury selection commenced on October 30, 2000 (*see* Doc. 12, Ex. A at 13). The state made its plea offer of 8–15 years on October 31, 2000, in between jury selection and trial (*id.*, Ex. A at 73, 83). When the prosecutor informed the trial judge, on November 1, 2000, about the offer, the judge told both parties that Defendant could not accept the offer: "As I clearly announced at the time that we began jury selection Monday [, October 30, 2000,] all deals are off the board. If he pleads, it is straight up" (*id.*, Ex. A at 13). *See also id.*, Ex. A at 111 ("[T]here had not been a negotiated plea prior to jury selection when the judge took all plea offers off the table.").[5] Thus, the record clearly reflects that trial judge would not have allowed Petitioner to accept the state's plea offer even if he had wanted to accept it and even if he had been correctly advised of the maximum possible sentence. Therefore, Petitioner cannot show that his counsel's misadvice about the maximum sentence had any conceivable effect on the outcome of the proceedings.

Additionally, to the extent Petitioner argues that his counsel's misadvice about the maximum sentence rendered his plea involuntary, he has likewise failed to meet the prejudice prong of Strickland. Even if Petitioner thought the maximum sentence was 15 years when he initially decided to enter a plea to the judge, Petitioner was informed, on the record, that the maximum was 20 years (Doc. 12, Ex. A at 21–23). When questioned by the trial judge before entering his plea, Petitioner indicated several times that he understood he could be sentenced to up to 20 years (*see id.*, Ex. A at 21–22). In addition, after the trial judge questioned Petitioner, the state attorney asked Petitioner if he understood that the judge could sentence him to "anything from probation up to 20 years in the state prison on just these offenses," and Petitioner responded, "Yes, sir" (*id.*, Ex. A at 25). The trial transcript indicates that the jury had been selected and Petitioner could have proceeded to trial instead of entering a plea (*id.*, Ex. A at 17–18). However, at no time did Petitioner ask to withdraw his plea once he learned that the maximum possible sentence was 20 years (*see id.*, Ex. A at 21–25).

---

[5]The prosecutor testified at the evidentiary hearing that it was "frequently" the judge's practice to refuse plea agreements after jury selection, but "upon occasion he would override that" (*see* Doc. 12, Ex. A at 85–86). However, it is clear from the judge's statements that he would not accept any negotiated plea offers in Petitioner's case after the trial commenced on October 30, 2000.

Therefore, Petitioner has failed to demonstrate a reasonable possibility that the results of the proceeding would have been different if not for his counsel's misadvice regarding the maximum sentence. Accordingly, his ineffective assistance claim is without merit.

Based upon the foregoing, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that James R. McDonough is substituted for James V. Crosby, Jr. as Respondent.

And it is respectfully **RECOMMENDED**:

That the amended petition for writ of habeas corpus (Doc. 7) be **DENIED**.

At Pensacola this 16th day of October 2006.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**Objections to these proposed findings and recommendations may be filed within ten (10) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.**  *See* **28 U.S.C. § 636;** United States v. Roberts, **858 F.2d 698, 701 (11th Cir. 1988).**